UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ASHLEY HALL, both individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RAPID INVESTMENTS, LLC, d/b/a RAPID FINANCIAL SOLUTIONS, d/b/a RELEASE PAY; and AXIOM BANK N.A.,<br><br>Defendants. | NO.<br><br>COMPLAINT (CLASS ACTION) |

Plaintiff Ashley Hall ("Hall"), on behalf of herself and all others similarly situated, brings this Class Action Complaint against Defendants Rapid Investments, LLC ("Rapid") and Axiom Bank N.A. ("Axiom").

## I. INTRODUCTION

1.      When individuals are arrested and detained, detention facilities confiscate their personal property, including cash. Additional money may be sent to detainees by friends or family, or detainees may earn money while detained. This money is held in trust while the persons are in custody and returned when the individuals are released ("Releasees"). Historically, Releasees' cash was simply given back, or the funds were returned with a check. Recognizing the potential to profit (at the expense of Releases) from this simple process, Defendants Rapid Investments, LLC ("Rapid"), and Axiom

COMPLAINT – 1

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303    FAX (206) 223-0246

Bank ("Axiom"), convinced detention facilities to use their services to return this money to Releasees through their prepaid debit cards ("release cards"). Defendants do not charge the client facilities for this service. Instead, Defendants profit by transferring the Releasees' money to their accounts to load the release cards and then assess fees that the Releases never agreed to. Often, those fees consume the entire balance of the amount loaded on the card.

2. Releasees are forced to accept these fee-laden release cards to obtain the money they were legally owed; they are offered no alternative to the release card for the return of their money. As the Ninth Circuit explained in a prior case involving Rapid's release card scheme, Defendants' program does not benefit the Releasees. Instead, it relieves the facilities from the expense of returning confiscated funds and allows Defendants to seize millions of dollars in fees and other charges from Releasees. *Reichert v. Rapid Investments Inc., et al.*, 54 F.3d 1220, 1231 (9th Cir. 2022) ("Imposing that obligation on [Releasees] is hardly a benefit."). As the Ninth Circuit held in yet another case involving release cards, "[t]his case illustrates some of the hazards and risks that may arise when prisons transfer what formerly were government functions to for-profit enterprises." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 569 (9th Cir. 2020).

3. Defendants Rapid and Axiom have individually, and at times together, engaged in abusive and illegal prison profiteering by exploiting plaintiff Hall and members of the class during the chaotic and confusing times when they were arrested, detained, and released from custody. Upon release from custody, individuals receiving release cards, such as Plaintiff Hall, are provided with no alternative method to reclaim their funds—they must accept a release card upon leaving the facility or they lose all their money. If they decline to accept a release card, their money will be taken through inactivity fees, regardless of whether the card is removed from the facility or even ever activated. *See Exhibit 1*, p. 1 ("However, an inactivity fee will be charged to the card

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303   Fax (206) 223-0246

according to the fee table after the applicable dormancy period, ***even if the card has not been activated***.") (emphasis added).

4.    In order to implement this scheme, Defendants arrange for money obtained from Plaintiff Hall and the members of the class to be electronically transferred to an Axiom account without the Releasees' consent or knowledge. This is illegal under the Electronic Fund Transfer Act, 15 U.S.C. § 1693 ("EFTA"). The release card is then issued by Defendants, who continue to hold and control the funds, including disbursements (to themselves) of fees charged to Plaintiff Hall and class members. This is also a violation of law. Defendants issue the release cards knowing that the cards are involuntarily issued without an oral or written request in advance and they also know that recipients neither requested their funds be transferred to the bank nor requested Defendants fee-laden release card be used to return their money. This is illegal as well. Finally, fees that were never agreed to by the Releasees are charged and electronically taken from the release card, ***even if the card is never even used by the Releasee***. All of this is a violation of law, too.

5.    Put simply, the release cards were never "requested" by Plaintiff Hall and other releasees who had no choice but to accept the card if they wanted their money returned to them. Likewise, Plaintiff Hall and other releasees never "authorized" Defendants to take their funds, deposit those funds in an Axiom account, and then put them on an activated and validated release card—all violations of the EFTA.

6.    Defendants provide their cardholder agreement with the release card that purports to authorize them to collect fees and impose other obligations on the involuntary recipients. It states: "This Cardholder Agreement ("Agreement") sets forth the terms of your prepaid card." This "Agreement" was not provided to Plaintiff Hall and other class members until after (1) their money was transferred to, and under control

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303    FAX (206) 223-0246

of, Defendants, (2) the release card was loaded with their funds, (3) the release card was validated and ready for use, and (4) the release card was handed to the recipient.

7.     After illegally issuing validated release cards to involuntary consumers, Defendants then took money from those individuals by charging an array of fees purportedly "authorized" under the Cardholder Agreement that the consumers never agreed to, including "inactivity" fees, monthly fees, cash withdrawal fees, balance inquiry fees, and ATM decline fees. Releasees never agreed to these fees, and never agreed that Defendants could take possession of their money. Releases became involuntary "customers" of Defendants, being forced to pay fees and charges that they never agreed to.

8.     Plaintiff Hall was in custody at the Lewis County Jail and released on August 17, 2024. When she was released, she was due $16.75 in funds, but those funds had been transferred to an account owned by Defendants without her knowledge. Her money was then returned to her on a prepaid debit card issued by Defendants. Although Plaintiff Hall never used the card in any way, she was subsequently charged an "inactivity fee," and had money taken from her by Defendants.

9.     Defendants have engaged in a pattern of unlawful, deceptive, unfair, and unconscionable profiteering in seizing money from Releasees, transferring that money to an account controlled by them, and then issuing an unrequested activated prepaid release card which charges fees that are illegal (and were never agree to). In so doing, Defendants have violated the EFTA and, for the Washington Subclass defined herein, the Washington Consumer Protection Act, RCW 19.86. In addition, for the Washington Subclass, Defendants have converted funds and been unjustly enriched by their conduct.

COMPLAINT – 4

## II.  THE PARTIES

10.     Plaintiff Hall lives in and is a citizen of Lewis County, Washington. Plaintiff Hall involuntarily received an activated, fee-laden debit card issued by Defendants when she was released from the Lewis County Jail.

11.     Defendant Axiom is a bank that holds a national (federal) charter and is based in Maitland, Florida. It is a member of the FDIC, operating branches across Florida. As of September 30, 2024, it reported total assets of approximately $815 million. Defendant Axiom has contracted with Rapid to issue prepaid debit cards nationwide, including in Lewis County.

12.     Defendant Rapid Investments, LLC is a Utah corporation that does business as Rapid Financial Solutions and other various trade names, including "ReleasePay" and "Access Freedom." Rapid Investments markets to correctional facilities, including on its webpage "rpdfin.com/solutions/releasepay/" where it states that "From city, county jails and detention centers, to transactional work programs and State Departments of Corrections, ReleasePay is the hassle-free way to pay participants and parolees accurately and on time." It includes testimonials and directly solicits business by "scheduling a call with one of our payment technology experts."  Rapid Investments markets its prepaid cards to government entities, including Lewis County, financial institutions, and other private enterprises, both directly and through trade shows, conferences, and social media. These entities in turn disseminate Rapid Investments' products to the general public.  It further advertises to both correctional facilities and to cardholders through its site "releasepay.com" where it actively solicits business from both facilities and consumers. Rapid Investments worked with Axiom to provide ReleasePay and/or AccessFreedom cards to individuals being released from Lewis County Jail, among many others.

COMPLAINT – 5

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

### III.  JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, namely 42 U.S.C. § 1983 and 15 U.S.C. § 1693.

14.     This Court may exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to the claim occurred within this District.

### IV.  FACTS

**A.    Background**

16.     Lewis County, like all jails, prisons, and detention facilities, keeps an individual's confiscated cash until his or her release. These funds are held in trust with the understanding that the State will protect the property on the individual's behalf.

17.     Traditionally, when inmates were released from jails, prisons, and other detention facilities, their jailers returned to them in the form of cash or check any money that the jailers confiscated at booking. The jailers also traditionally returned to them, in the form of cash or check, any monies that had accrued in the individual's inmate trust account.

18.     This began to change as entities like Rapid saw a way to profit from this straightforward return of money. At no cost to the jail or correctional facility, Rapid, Axiom, and other promoters would agree to provide correctional facilities with a method to return money to releases through a prepaid release card. Rapid and Axiom, and others, would then make enormous amounts of money by imposing involuntary fees and charges on the card, even if the Releasee never used the card. Consistent with this scheme, Rapid entered into a contract with Lewis County to provide prepaid debit cards issued by it and Axiom to released inmates, in lieu of a check. The cards were loaded

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

1   with funds, activated, and ready for immediate use prior to being given to the released
2   inmate.

3       19.    Defendants have issued thousands of release cards to members of the class.
4   It continues to do so.

5       20.    Inmates with $22.94 or less in their accounts, as Plaintiff Hall had, often
6   cannot access their money because, even if they are able to find an ATM that does not
7   charge its own fee in addition to the $2.95 charged by Defendants, the account balance
8   dips below $20—the minimum withdrawal amount at most ATM machines. These low-
9   balance cards are not just particularly lucrative for Defendants; they are also uniquely
10  burdensome on the cardholder.

11      21.    On information and belief, individuals who are deported after their arrest
12  and released back in their home country may not be able to access their funds at all.
13  Many released individuals report that prepaid debit cards and/or their PIN numbers do
14  not work abroad, or that limits on international ATM withdrawals force them to accrue
15  additional withdrawal fees.

16      22.    Individuals released from Lewis County Jail and other facilities do not
17  voluntarily engage Defendants, enroll in the program, or take any affirmative steps to
18  form any contractual relationship with Rapid, Axiom, or MasterCard. They have no
19  choice but to accept a release card; receiving the return of their own money in the form
20  of cash or check is not an option. If a released inmate refuses to accept a release card,
21  they simply lose their money as the balance is depleted by imposition of involuntary
22  fees.

23  **B.    Plaintiff Hall's Experience**

24      23.    Plaintiff Hall resides in Lewis County, Washington.

25      24.    In August of 2024, Hall was incarcerated at the Lewis County Jail.

26

COMPLAINT – 7

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

25.    Plaintiff Hall was released from Lewis County Jail on August 17, 2024. Upon her release, she received her personal property back, but she did not get her $16.75 in cash that had been placed in her trust account during her incarceration. Instead, a Lewis County Jail officer gave her an activated prepaid debit release card from Defendants loaded with the confiscated amount. Hall never requested—or wanted—her cash to be returned to her by a card issued by Defendants. She never authorized or approved of her money being transferred into an account controlled by Defendants. She never wanted to enter into a contract or business relationship with Defendants.

26.    When handed to Plaintiff Hall upon her release, the release card issued by Defendants was loaded with her money and ready for use. *Exhibit 2* ("Validate by doing one of the following … Use the card."). Given that the card was ready for immediate use it was "validated" under 15 U.S.C. § 1693i(c) and 12 C.F.R. § 1005.5. *See* 15 U.S.C. § 1693i(c) (a card is "validated" if one can "begin transacting on the card.").

27.    Plaintiff Hall made no request, oral or written, for validation before the card was handed to her. She has never made such a request.

28.    Plaintiff Hall never applied for the release card issued by Defendants. Plaintiff Hall never applied for any release card issued by any entity.

29.    Plaintiff Hall never requested, orally or in writing, that her money be returned to her in a release card.

30.    Plaintiff Hall never wanted to enter into any contract with Defendants.

31.    Plaintiff Hall never authorized Defendants to take, transfer, possess, or control her money.

32.    Plaintiff Hall was never provided with an opportunity to review any of the fees or other terms and conditions associated with the release card issued by Defendants prior to it being validated. Plaintiff Hall never agreed to any of the terms and conditions

COMPLAINT – 8

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

in the paperwork that was handed to her simultaneously with her receipt of a release card that was already activated.

33.    Plaintiff Hall had no choice but to accept the release card instead of her cash. Plaintiff Hall could not meaningfully object to receiving the prepaid debit card. Plaintiff Hall's receipt of her cash back in the form of the release card was completely and utterly involuntary.

34.    Plaintiff Hall has never used her card. Despite this, Defendants have seized and withdrawn money from her release card and, under the terms of the "Agreement" that she never agreed to, claim the right to continue to do so until all her money is taken.

## V.  CLASS CLAIMS

35.    Defendants have engaged in the same conduct with respect to thousands of released inmates across the United States.

36.    Plaintiff Hall brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following nationwide Class:  All persons in the United States who, at any time since January 16, 2024, were:  (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility; (2) entitled to the return of money either confiscated from them or remaining in their inmate accounts when they were released from the facility; and (3) issued a prepaid debit card from Defendants that was subject to fees, charges, and restrictions. This class shall be referred to as the "Nationwide Class."

37.    Additionally, Plaintiff Hall seeks to represent the following Washington Subclass:  All persons who, at any time since January 16, 2024, were:  (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility located in the State of Washington; (2) entitled to the return of money either confiscated from them or remaining in their inmate accounts when they were released from the facility; and (3) issued a prepaid debit card from Defendants that was subject

COMPLAINT – 9

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

to fees, charges, and restrictions. This class shall be referred to as the "Washington Subclass." The Nationwide Class and the Washington Subclass are collectively referred to herein as the "Class."

38. The Nationwide Class and the Washington Subclass are both so numerous that joinder of all members is impracticable. Each class has more than 1,000 members.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Questions of law and fact common to the Class include but are not limited to:

(a) Whether Defendants illegally issued validated release cards to Plaintiff Hall and the Class in violation of the EFTA;

(b) Whether the release card that the Class received carried unlawful fees;

(c) Whether Defendants improperly took and exercised control over the funds of the Class without their consent or agreement;

(d) Whether Defendants violated the Electronic Fund Transfer Act, 15 U.S.C. 1693, *et seq.*;

(e) Whether Defendants engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce and thus violated the Washington Consumer Protection Act, RCW 19.86;

(f) Whether Defendants were unjustly enriched through their prepaid card policies and practices;

(g) Whether Defendants converted money belonging to the Class by taking unlawful fees;

(h) Whether and what form(s) of relief should be afforded to the Class; and

COMPLAINT – 10

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

(i)    Whether the Class has suffered damages as a result of Defendants' actions, and if so, the measure and amount of such damages, including any statutory damages.

40.    Plaintiff Hall's claims are typical of the claims of the other members of the Class he seeks to represent. Defendants' practices have targeted and affected all members of the Class in a similar manner; *i.e.,* they have all sustained damages arising out of Defendants' practices.

41.    Plaintiff Hall will fully and adequately protect the interests of all members of the Class. Plaintiff Hall retained counsel experienced in both complex class action and consumer fraud litigation, including expertise in litigating over release cards. Plaintiff Hall has no interests which are adverse to or in conflict with the interests of the other members of the Class.

42.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

43.    The interests of the members of the Class in individually controlling the prosecution of separate actions are theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the individual Class members may be relatively small. Therefore, the expense and burden of individual litigation make it

COMPLAINT – 11

virtually impossible for Class members to redress the wrongs done to them. Plaintiff Rutherford anticipates no difficulty in management of this action as a class action.

44.    Defendants have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole. This is particularly true where, as here, Defendant Rapid has been previously sued and paid a substantial class action settlement—a settlement that did not include Plaintiff Hall or anyone during the class period sought here—yet refuses to end its illegal behavior.

## VI.  FIRST CAUSE OF ACTION

### (Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq*.)

45.    Plaintiff Hall re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

46.    The primary objective of the EFTA is to protect consumer rights by providing a basic framework establishing the rights, liabilities, and responsibilities of participants in the electronic fund and remittance transfer systems.

47.    Defendants Rapid and Axiom are financial institutions as defined by 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(a)(2)(i) because they directly or indirectly hold accounts belonging to consumers and/or they issue an access device to consumers. They are also "persons" subject to liability under 15 U.S.C. § 1693m(a) for failing "to comply with any provision" of the EFTA.

48.    Plaintiff Hall and members of the Class are "consumers" under 15 U.S.C. § 1693a(6).

49.    Under the EFTA, an unsolicited card is permitted only if *all* the following conditions are met:

(1) such card, code, or other means of access is not validated;

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

(2) such distribution is accompanied by a complete disclosure, in accordance with section 1693c of this title, of the consumer's rights and liabilities which will apply if such card, code, or other means of access is validated;

(3) such distribution is accompanied by a clear explanation, in accordance with regulation of the Bureau, that such card, code, or other means of access is not validated and how the consumer may dispose of such code, card, or other means of access if validation is not desired; and

(4) such card, code, or other means of access is validated only in response to a request or application from the consumer, upon verification of the consumer's identity.

15 U.S.C. § 1693i(b). *See also* 12 C.F.R. § 1005.5(b) (same); 12 C.F.R. § 1005.2(a)(1) ("'Access device' means a card…").

50.     This statutory and regulatory scheme protects consumers by mandating that before a card is validated, the consumer must receive a complete disclosure of the rights and liabilities that "will apply if such card … is validated."

51.     "Validation" occurs when the card "may be used to initiate an electronic fund transfer." 15 U.S.C. § 1693i(c). In other words, a validated card is one that is already activated. The release cards issued to Plaintiff Hall and class members by Defendants were already validated.

52.     The EFTA regulates the precise form of assent necessary to make the terms and conditions binding on the consumer. Pursuant to Section 4, assent to the issuance of the card (and its corresponding terms and conditions) can only occur "in response to a request or application from the consumer." 15 U.S.C. § 1693i(b)(4). The consumer must also be provided with the terms and conditions before the card is validated so that the consumer can decide whether to accept those terms. 15 U.S.C. § 1693i(b)(2). No other form of assent is recognized by statute. 15 U.S.C. § 1693i(a), (b). As a result, a consumer cannot be said to have "assented" to a contract for a card by simply taking it upon release, or subsequently using the card. Under the EFTA, there is only one way that an

COMPLAINT – 13

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

unsolicited card would be valid under federal law:  a consumer must make an affirmative "request or application" for activation. 15 U.S.C. § 1693i(b)(4). With respect to Plaintiff Hall and all Class members, the cards were validated before they were even provided to them. No "request" or "application" preceded validation of any of the cards given to Plaintiff Hall or Class members upon their release.

53.     No contract or agreement was formed between Defendants and Plaintiff Hall and Class members. *Reichert v. Rapid*, 56 F.4th 1220, 1231 (9th Cir. 2022) ("no contract was formed"). Defendants had no authority or right to take money from Plaintiff Hall and Class members in the form of fees. Defendants had no authority or right to transfer funds into an account they controlled and held, conduct specifically prohibited by the EFTA. These transfers are "unauthorized electronic fund transfer[s]" under the EFTA and are illegal. *See* EFTA, 15 U.S.C. § 1693a(12).

54.     Plaintiff Hall and members of the Class are members of the general public when they receive release cards upon being released from confinement. *Brown v. Stored Value Cards*, 953 F.3d 567, 573 (9th Cir. 2020).

55.     Defendants directly or indirectly offered, advertised, or otherwise promoted release cards to Plaintiff Hall and the Class. This occurred through webpages, social media, and trade shows, among other methods of marketing. Rapid contracted with Axiom to market the release card program to municipalities and correctional facilities, which indirectly and directly marketed the program to the general public. *Brown v. Stored Value Cards*, 953 F.3d 567, 573 (9th Cir. 2020). Defendants also marketed release card products by advertising and marketing upgrades and additional features for the release cards in materials provided directly to releasees and in internet advertising.

56.     The release cards are "general use prepaid card[s]" under the EFTA. Under Section 1693l-1 of the EFTA, it is unlawful for "any person" to impose a service fee with

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

respect to a general use prepaid card. A "service fee" is a "periodic fee, charge, or penalty for holding or use of a … general-use prepaid gift card." Defendants violated this section, in addition to the other disclosure requirements and prohibitions, of the EFTA and its implementing regulations.

57.     Defendants also charge an "inactivity fee" after 100 days of no activity, even if the release card was never used by the involuntary recipient of the card. As the Cardholder agreement states, "an inactivity fee will be charged to the card according to the fee table after the applicable dormancy period, even if the card has not been activated." The "inactivity fee" of $3.95, charged after just 100 days of inactivity and then every month thereafter, is expressly illegal under EFTA and its implementing regulations. *See, e.g.,* 12 C.F.R. § 1005.20. Plaintiff Hall was, and continues to be, charged an "inactivity fee" after 100 days of inactivity.

58.     Defendants' violations of the EFTA have caused and continue to cause Plaintiff Hall and the Class damages.

59.     Plaintiff Hall and the Class are entitled to both their actual and statutory damages, as well as reasonable attorney fees and costs, pursuant to 15 U.S.C. § 1693m.

## VII.  SECOND CAUSE OF ACTION

**(Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq*.)**

60.     Plaintiff Hall re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

61.     Plaintiff Hall brings this action on behalf of herself and the Washington Subclass.

62.     Defendants, Plaintiff Hall, and the Washington Subclass members are "persons" within the meaning of Wash. Rev. Code § 19.86.010(1).

COMPLAINT – 15

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

63.     Defendants are engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2) because the unsolicited release cards can be used in commerce in Washington.

64.     The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

65.     In the course of its business, Defendants, through their agents, employees, and/or subsidiaries, violated the Washington CPA. Specifically, in distributing illegal unsolicited validated prepaid debit cards and then taking and keeping Plaintiff Hall's and the Washington Subclass members' money in the form of illegal fees, Defendants engaged in unfair and/or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.020.

66.     Plaintiff Hall and the Washington Subclass members suffered ascertainable losses and actual damages in the loss of their property as a direct and proximate result of Defendants' unfair and/or deceptive acts or practices.

67.     Defendants' violations present a continuing risk of injury to Plaintiff Hall and the Washington Subclass members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

68.     Pursuant to Wash. Rev. Code § 19.86.090, Plaintiff Hall and the Washington Subclass members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, treble damages, attorney fees and costs, and any other just and proper relief available under the Washington CPA.

## VIII. THIRD CAUSE OF ACTION

### (Conversion)

69.     Plaintiff Hall re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

70.     Lewis County Jail and other correctional facilities that issue Defendants' release cards have taken money from Plaintiff Hall and other members of the Washington Subclass to hold during their incarceration, acting in the capacity of their representative. Upon their release, Lewis County Jail and other correctional facilities were obligated to return the full amount of their money to them. Any purported agreement to use the release cards to return that money, less fees charged by Defendants, lacks consideration and is unenforceable.

71.     Conversion occurs when a person intentionally interferes with chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession. Money may be the subject of conversion if Defendants wrongfully received it.

72.     Defendants, exercising its control over the funds in the release card accounts, have wrongfully collected fees from Plaintiff Hall and members of the Washington Subclass, and have taken specific and readily identifiable funds from Plaintiff Hall and the members of the Washington Subclass in payment of these fees.

73.     Defendants, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff Hall and the Washington Subclass, without legal justification.

74.     Defendants continue to retain these funds unlawfully and without the consent of Plaintiff Hall or the Washington Subclass.

75.     Defendants intend to permanently deprive Plaintiff Hall and the Washington Subclass of these funds.

76.     These funds are properly owned by Plaintiff Hall and the Washington Subclass, not Defendants, which now claims that they is entitled to its ownership, contrary to the rights of Plaintiff Hall and the Washington Subclass.

COMPLAINT – 17

77.    Plaintiff Hall and the Washington Subclass are entitled to the immediate possession of these funds.

78.    Defendants have wrongfully converted these specific and readily identifiable funds.

79.    Defendants wrongful conduct is continuing.

80.    As a direct and proximate result of Defendants' wrongful conversion, Plaintiff Hall and the Washington Subclass have suffered and continue to suffer damages.

81.    Plaintiff Hall and the Washington Subclass are entitled to damages and prejudgment interest in an amount to be determined at trial.

## IX.  FOURTH CAUSE OF ACTION

### (Unjust Enrichment)

82.    Plaintiff Hall re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

83.    Defendants have been unjustly enriched by taking funds from the release card accounts under their control in the form of fees assessed upon Plaintiff Hall and the Washington Subclass.

84.    The circumstances are such that it would be unjust and inequitable for Defendants to retain the benefit that it unjustly received from Plaintiff Hall and the Washington Subclass members.

85.    Plaintiff Hall and the Washington Subclass members have conferred benefits on Defendants, which Defendants have knowingly accepted and retained.

86.    Plaintiff Hall and the Washington Subclass members have suffered and continue to suffer actual damages as a result of Defendants' unjust retention of proceeds from its acts and practices alleged herein.

COMPLAINT – 18

87.    Plaintiff Hall and the Washington Subclass members seek to disgorge Defendants' unlawfully retained benefits resulting from its unlawful conduct, and seek restitution for the benefit of Plaintiff Hall and the Washington Subclass.

88.    Plaintiff Hall and the Washington Subclass members are entitled to the imposition of a constructive trust upon Defendants, such that their unjustly retained benefits are distributed equitably by the Court to and for the benefit of Plaintiff Hall and the Washington Subclass members.

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hall, on behalf of herself and on behalf of the Class, prays for the following relief:

1.    An order certifying this case as a class action and appointing Plaintiff Hall and the undersigned counsel to represent the Class;

2.    Declaration, judgment, and decree that Defendants' actions alleged herein:

(a)    Violate the Electronic Fund Transfer Act;

(b)    Violate the Washington Consumer Protection Act;

(c)    Constitute conversion; and

(d)    Constitute unjust enrichment;

3.    Damages to Plaintiff Hall and the Washington Subclass to the maximum extent allowed under state and federal law, including ordering Defendants to pay actual and statutory damages;

4.    Costs and disbursements of the action;

5.    Restitution and/or disgorgement of ill-gotten gains;

6.    Pre- and post-judgment interest;

7.    Reasonable attorney fees; and

8.    Such other relief, in law and equity, as this Court may deem just and proper.

COMPLAINT – 19

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

1    DATED: January 16, 2025.

2                                SIRIANNI YOUTZ
                                SPOONEMORE HAMBURGER PLLC
3

4                                 _s/ Richard E. Spoonemore_
                                Richard E. Spoonemore, WSBA #21833
5                                Email: rick@sylaw.com

6                                 _s/ Eleanor Hamburger_
7                                Eleanor Hamburger, WSBA #26478
                                Email: ele@sylaw.com
8

9                                3101 Western Avenue, Suite 350
                                Seattle, WA  98121
10                               Telephone:  (206) 223-0303
                                Fax:  (206) 223-0246
11

12                               Attorneys for Plaintiff Hall

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246